IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>2015 DODGE RAM 3500 TRUCK, VIN 3C6URVJG5FES12061, 44,846.80 CARTONS OF ASSORTED BRAND CIGARETTES, ASSORTED SAMPLES OF ASSORTED CARTONS OF CIGARETTES, CROWN FORK-LIFT, RR S200 SERIES, SERIAL NUMBER 1A268808, 52,843 CARTONS OF ASSORTED BRAND CIGARETTES, and 2005 FREIGHTLINER M2106 BOX TRUCK, VIN 1FVACWDCX5HV11800,<br><br>Defendants. | **4:18CV3097**<br><br>**MEMORANDUM AND ORDER** |

The government filed the above-captioned action for forfeiture in rem on July 18, 2018. (Filing No. 1). The defendant property was seized on January 30 and 31, 2018, from properties located on the Winnebago Reservation in Nebraska pursuant to four warrants signed by the undersigned magistrate judge.[1] The government alleges the defendant property is subject to forfeiture as proceeds derived from violating the Contraband Cigarette Trafficking Act, l8 U.S.C. §

---

[1] 4:18-MJ-3005, <u>In the Matter of the Search of One Mission Drive, Winnebago, NE 68071</u>, (Filing No. 39-7);

4:18-MJ-3006, <u>In the Matter of the Search of 509 Reuben Snake Avenue, Winnebago, NE 68071</u>, (Filing No. 39-10);

4:18-MJ-3007, <u>In the Matter of the Search of 701 Buffalo Trail, Winnebago, NE 68071</u>, (Filing No. 39-9); and

4:18-MJ-3009, <u>In the Matter of the Search of 503 Ho-Chunk Plaza, Winnebago, NE 68071</u>, (Filing No. 39-8).

2341(c)(2). The warrants ordered seizure of all cigarette packs that did not bear a Nebraska tax stamp, and seizure of property used in the distribution, manufacture, and transportation of cigarettes, to include forklifts and box trucks. Claimants HCI Distribution, Inc. ("HCID") and Rock River Manufacturing, Inc. ("Rock River Manufacturing"), both wholly owned subsidiaries of Ho-Chunk Industries ("HCI"), have filed claims to recover the property. (Filing Nos. 19 & 20).

On August 22, 2018, Rock River Manufacturing filed an Amended Claim asserting ownership of Defendant 52,843 Cartons of Assorted Brand Cigarettes. (Filing No. 25). On the same date, HCID filed an Amended Claim asserting ownership of the remaining five Defendant properties, including cigarettes and vehicles. (Filing No. 24). Claimants filed their answer to the operative complaint on September 4, 2018. (Filing No. 26).

The following motions are pending before me and fully submitted:

1) Claimants' motion to unseal the search warrants, including the affidavits supporting those warrants, (Filing No. 37);

2) The government's motion for interlocutory sale of the cigarettes, (Filing No. 43); and

3) The government's motion to stay the above-captioned civil forfeiture case pending the outcome of the government's related criminal investigation, (Filing No. 45).

For the reasons explained below, Claimants' motion will be denied and the government's motions will be granted.

STATEMENT OF FACTS

As relevant to the pending motions, the facts are undisputed.

Claimants Rock River and HCID are corporations organized under the laws of the Winnebago Tribe, and are wholly owned and operated by the Tribe. (Filing No. 39-1, ¶ 3, 39-3; 39-4; 39-14, ¶ 3). Rock River is a federally-licensed cigarette manufacturer and federally-licensed importer of cigarettes. (Filing No. 39-1, ¶¶ 7-9, 39-2). HCID distributes cigarettes. (Filing No. 39-14, ¶¶ 4-5). During the January 30 seizures, ATF seized 52,843 cartons of cigarettes owned by Claimant Rock River from its warehouse located on the Winnebago reservation at 503 Ho-Chunk Plaza and 505 Ho-Chunk Plaza, (Filing No. 39-1, ¶¶ 5-6, 10-13; 39-2 at CM/ECF pp. 1-5, 39-5), and it seized 44,846.80 cartons of cigarettes, a 2015 Dodge Ram 3500, Assorted Samples of Cartons and a Crown Fork Lift RR S200 owned by Claimant HCID. (Filing Nos. 39-6; 39-11; 39-12; 39-13; 39-14, ¶¶ 10-28).

As to the facts underlying the seizure warrants, the government's criminal investigation is ongoing, as explained with specificity in the government's evidence filed ex parte as permitted under 18 U.S.C. § 981(g)(5). (Filing No. 47). But those facts have nonetheless spawned substantial litigation dating back to before the seizures occurred.

As explained in <u>Ho-Chunk, Inc. v. Sessions</u>, 253 F. Supp. 3d 303, 306 (D.D.C. 2017), in June 2016, Claimants Rock River and HCID, along with Woodlands Distribution, Inc. (Woodlands), another wholly owned subsidiary of HCI (Filing No. 39-14, ¶¶ 29, 31), received a notice from ATF stating the agency intended to inspect and copy information about the HCI entities' cigarette and tobacco inventory. The ATF claimed it was entitled to perform such inspections pursuant to the CCTA. The HCI entities agreed to provide the requested

3

information regarding off-reservation transactions, but they objected to providing records of the inter-tribal transactions absent a federal court ruling which clarified their obligation to comply with the CCTA reporting requirements. Ho-Chunk, 253 F. Supp. 3d at 306. In August of 2016, HCI filed a federal court complaint seeking declaratory relief in the United District Court for the District of Columbia.

On March 24, 2017, the District of Columbia District Court held that the CCTA's recordkeeping requirements were applicable to the HCI entities; HCID, Rock River, and Woodlands. Ho-Chunk, 253 F. Supp. 3d at 311. HCI moved to enjoin enforcement of the court's order pending appeal. That motion was denied on August 2, 2017. Ho-Chunk, Inc. v. Sessions, No. 16-CV-01652 (CRC), 2017 WL 4856862 (D.D.C. Aug. 2, 2017). Explaining that the ATF is statutorily required to "determine whether cigarettes are being manufactured, sold, or distributed illegally," the District of Columbia court held it would "undermine the effectiveness of the CCTA to delay the enforcement of its recordkeeping provision as to Plaintiffs for a year or more, pending the resolution of this litigation." Ho-Chunk, Inc. v. Sessions, No. 16-CV-01652 (CRC), 2017 WL 4856862, at *2 (D.D.C. Aug. 2, 2017). HCI, HCID, Rock River, and Woodlands promptly appealed.

The warrant applications at issue were presented before and signed by the undersigned magistrate judge on January 26, 2018 (Filing No. 39-7, 39-9, & 39-10), and January 30, 2018 (Filing No. 39-8). The warrants were executed on January 30 and 31, 2018.

On March 29, 2018, HCI moved for immediate return of all seized data and property. (Filing No. 6, 4:18-MJ-3005, 4:18-MJ-3006, 4:18-MJ-3007, 4:18-MJ-3009). The undersigned magistrate judge denied HCI's motion on June 5, 2018. (Filing No. 13, 4:18-MJ-3005; Filing No. 15, 4:18-MJ-3006; Filing No. 13, 4:18-MJ-

3007; Filing No.13, 4:18-MJ-3009). That decision was appealed on June 19, 2018. Judge Kopf held a hearing on the appeal on June 26, 2018. (Filing No. 18, 4:18-MJ-3005; Filing No. 20, 4:18-MJ-3006; Filing No. 18, 4:18-MJ-3007; Filing No.18, 4:18-MJ-3009).

On July 3, 2018, the Court of Appeals for the District of Columbia affirmed the ruling of the District of Columbia trial court. Ho-Chunk, Inc. v. Sessions, 894 F.3d 365 (D.C. Cir. 2018). The Circuit Court held that tribal entities are not exempt from the CCTA's recordkeeping requirements: The CCTA and its implementing regulations are applicable to Rock River, HCID, and Woodlands—corporations wholly-owned by the Winnebago Tribe of Nebraska, a federally-recognized Indian tribe. Ho-Chunk, Inc., 894 F.3d at 367.

The above-captioned forfeiture action was filed on July 19, 2018. (Filing No. 1). The forfeiture complaint was amended on July 24, 2018 to add the Defendant property 2005 Freightliner M2106 Box Truck VIN: 1FVACWDCX5HV11800. (Filing 5, ¶ 2(1)).

On July 25, 2018, Judge Kopf entered his ruling affirming the denial of HCI's demand for immediate return of the seized property. (Filing No. 19, 4:18-MJ-3005; Filing No. 21, 4:18-MJ-3006; Filing No. 19, 4:18-MJ-3007; Filing No.19, 4:18-MJ-3009). Judge Kopf's order set forth specific terms for review of the seized documents by the government's filter team, and as to HCI's request for discovery, Judge Kopf stated "[t]here is no right to discovery under FRCP 16 at this time." (Filing No. 19, at CM/ECF p. 9, 4:18-MJ-3005; Filing No. 21, at CM/ECF p. 3, 4:18-MJ-3006; Filing No. 19, at CM/ECF p. 3, 4:18-MJ-3007; Filing No.19, at CM/ECF p. 3, 4:18-MJ-3009).

Rock River Manufacturing and HCID filed their claims in the forfeiture action on August 22, 2018. (Filing Nos. 24 & 25), and they answered the amended complaint on September 4, 2018. (Filing No. 26).

The seized tobacco has been stored in temperature-controlled storage at the federal government's expense since it was seized in January. Tobacco is perishable; it has a finite shelf life. (Filing Nos. 42, at CM/ECF p. 18, ¶ G; 77, at CM/ECF p. 4, ¶ 14). The government began discussions with Claimants no later than September of 2018 to sell the tobacco. (Filing No. 59, audio file). Those discussions stalled.

On October 11, 2018, Claimants filed their Motion to Unseal the warrant applications. (Filing No. 38). The government moved to stay further proceedings on October 12, 2018, and for interlocutory sale of the cigarettes on October 12, 2018. (Filing Nos. 43 & 45). The undersigned magistrate judge convened a telephonic hearing to facilitate a potential compromise and prompt resolution on the terms for selling the tobacco. (Filing No. 59, audio file). When it was clear that an agreement on how to conduct a commercially reasonable sale could not be reached during that call, the court suggested the government locate a consultant on the recommended type and terms for such a sale, and once the consultant's information was available, confer with Claimants' counsel and perhaps jointly propose an order for the interlocutory sale of the tobacco. (Filing No. 59, audio file).

The government received the consultant's information on November 19 and 20, 2018, which proposed an on-line auction of the defendant cigarettes and a detailed proposal for the division of the defendant cigarettes into lots to maximize the scope of interested buyers. All interested bidders must be pre-qualified by

completing a form, providing a copy of a valid Tobacco Dealers License, and submitting a deposit. The bidder must be in compliance with applicable state and federal laws relating to wholesale tobacco products; cannot owe any state or federal taxes, cannot be subject to any state or federal criminal investigation or prosecution; and must pay any applicable and appropriate taxes after purchase. (Filing No. 73-1, at CM/ECF pp. 2-3, ¶¶ 4-5, 7-9).

The information was forwarded to Claimant's counsel on November 20, 2018, with comments requested by November 30, 2018. No comments were received as of that date. (Filing No. 73-1, at CM/ECF p. 3, ¶ 10). The consultants personally inspected the stored tobacco products on December 6, 2018, and thereafter proposed no changes to their sale suggestions. (Filing No. 73-1, at CM/ECF p. 3, ¶ 11).

Counsel for the government and for Claimants met on December 7, 2018 to discuss the terms and sale procedures for the proposed sale and to answer Claimants' questions. Claimants' counsel did not request any changes to the proposed lot division of the defendant cigarettes. The government solicited Claimant's assistance in identifying potential bidders and provided Claimants with a copy of the marketing material and website for the auction. (Filing No. 73-1, at CM/ECF pp. 3-4, ¶¶ 13).

The parties were unable to reach an agreement on sale terms because they cannot agree on whether Claimants or any HCI-affiliated business or company, including Woodlands, Grand River Enterprises, Six Nations, Ltd. of Ontario Canada, or agents, members or principles thereof, should be prohibited from bidding on the lots. (Filing No. 73-1, at CM/ECF pp. 3-4, 19 ¶ 12 & Ex. B). Of these, Woodland is located in Nebraska, but it is not a licensed stamping agent in

Nebraska. Claimants will not certify that Woodlands would pay the necessary and applicable taxes if it was the winning bidder, and Claimants will not identify a Nebraska-licensed entity or person that would accept possession or delivery of the tobacco currently stored in Nebraska, state where the tobacco would be stored (other than HCID's warehouse) in Nebraska, provide the list of customers to whom the tobacco would be sold and the states in which these sales would occur, or state whether Woodlands is listed on the target states' directories. Claimants will also not confirm that Woodlands would maintain records and permit ATF inspection of those records as required by the CCTA. The government therefore believes Claimants' demand that Woodlands be allowed to participate in the auction "is a thinly veiled attempt to regain control of the Defendant cigarettes for the benefit of the overall HCI businesses, if not directly for physical control of the Defendant cigarettes by Claimants." (Filing No. 67, at CM/ECF p. 6).

LEGAL ANALYSIS

Motion to Unseal Search Warrant Applications
(Filing No. 37)

Claimants argue they are entitled to review the applications underlying the warrants executed on January 30 and 31, 2018 because: 1) Supplemental Rule 8(G)(a) of the Federal Rules of Civil Procedure presumably allows such discovery, 2) the warrant applications apparently misstated or concealed material facts in violation of Franks v. Delaware, 438 U.S. 154 (1978), and 3) Claimants have a First and Fourth Amendment right to receive the applications. The government argues disclosure of the applications at this time would jeopardize an ongoing criminal investigation.

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern civil asset forfeiture cases. 18 U.S.C. § 983, with Supplemental Rule G of the Federal Rules of Civil Procedure providing the procedural rules to be followed in such cases. Fed. R. Civ. P. Supp. Rule G.

There is a First Amendment right of access to judicial documents, including search warrant materials. There is also a Fourth Amendment right to privacy in information collected by the government. But each of these rights is qualified. Search warrant application materials can lawfully remain sealed to protect a compelling governmental interest, in this case, the government's on-going criminal investigation. Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corp. v. Pulitzer Pub. Co., 895 F.2d 460, 462, 466 (8th Cir. 1990). See also, In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 573 (8th Cir. 1988) (finding the First Amendment right of public access extends to documents filed in support of search warrant applications but such documents can remain sealed when necessary to protect a compelling government interest). "[S]earch warrant affidavits describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved." Certain Interested Individuals, 895 F.2d at 466. They often implicate individuals as either directly or indirectly in criminal misconduct, and disclosure of such materials could seriously damage reputations and careers. Certain Interested Individuals, 895 F.2d at 466. Pre-indictment status of the government's criminal investigation tips the balance decisively in favor of maintaining the documents under seal at this time. Certain Interested Individuals, 895 F.2d at 467.

The government has presented evidence which provides details regarding the status of its ongoing criminal investigation and the risks posed to that

investigation if the warrant applications are disclosed before the investigation is complete. (Filing No. 47). Based on this information, the court finds release of the warrant affidavits at this time will undermine the government's criminal investigation by disclosing the government's strategy for determining whether a crime has been committed and if so, by whom. Moreover, upon reviewing the warrant affidavits, the court finds that the facts are complex and intertwined, making redaction of the affidavits an unsuitable alternative.

Claimants claim they are entitled to the warrant affidavits under Supplemental Rule G of the Federal Rules of Civil Procedure. Fed. R. Civ. P. Supp. Rule G. Pursuant to Rule G(8), "if the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence." Fed. R. Civ. P. Supp. Rule G(8). Claimants argue that since Rule G expressly affords the right to file a motion to suppress challenging forfeiture of property, it must also implicitly grant the right to obtain the discovery needed to support that motion—in this case, the warrant applications. Citing the allegations within the forfeiture complaint, Claimants surmise what the warrant affidavits likely state and from those assumptions, they claim argue the warrant affidavits must have misstated the facts or concealed material information. Claimants argue they need access to the warrant affidavits to pursue their rights under Rule G(8). Claimants cite no law supporting this interpretation of Rule G.

Claimants' interpretation of Rule G cannot override the previously cited constitutional analysis. If Claimants are not entitled to receive the warrant affidavits by invoking the First and Fourth Amendments, they are likewise not entitled to those materials by citing an interpretation of Rule G that is not supported by any explicit language within the Rule or any judicial decision interpreting it. Moreover, Claimants' Franks analysis, built on a pyramid of suppositions, is not sufficient to

overcome the compelling government interest support by the government's evidence. (Filing No. 47).

Claimants' motion to unseal the warrant applications, including the officer's supporting affidavits, will be denied at this time.

## Motion for Interlocutory Sale of Cigarettes
(Filing No. 43)

The government has moved for interlocutory sale of the seized cigarettes, with the proceeds to become the substitute res pending the outcome of the forfeiture litigation. Pursuant to Supplemental Rule 7(b)(i)(A), "[o]n motion by a party or a person having custody of the property, the court may order all or part of the property sold if . . . the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action." Fed. R. Civ. P. Supp. Rule G(7)(b)(i)(A). The parties have stipulated that "[t]he seized inventory of cigarettes has been in the Government's possession since January 30, 2018, and has a short shelf-life remaining." (Filing No. 42, at CM/ECF p. 18, ¶ G).

Despite stipulating that the cigarettes are perishable and deteriorating with time, Claimants argue the cigarettes cannot be sold under § 2344(c) of the CCTA. Under § 2344(c):

> Any contraband cigarettes or contraband smokeless tobacco involved in any violation of the provisions of [the CCTA] shall be subject to seizure and forfeiture. The provisions of chapter 46 of title 18 relating to civil forfeitures shall extend to any seizure or civil forfeiture under this section. Any cigarettes or smokeless tobacco so seized and forfeited shall be either--

11

>> (1) destroyed and not resold; or
>>
>> (2) used for undercover investigative operations for the detection and prosecution of crimes, and then destroyed and not resold.

18 U.S.C. § 2344(c). Claimants argue § 2344(c) is specifically applicable to seized tobacco products. As such, they argue the court must apply this statutory language to prohibit the sale of the cigarettes seized pursuant to the CCTA, rather than the general language selling seized property under Rule G(7).

By its express language, the sale prohibition of § 2344(c) applies only to cigarettes which are both "seized and forfeited." The ATF seized Claimants' cigarettes, but those cigarettes are not considered forfeited until the court rules as such. That ruling has not been entered. Section 2344(c) is therefore inapplicable to the sale of cigarettes at issue in this lawsuit.

Claimants argue that even assuming the cigarettes can be sold, "the sale price should reflect economic reality, and preserve the value as it relates to [Claimants'] investment, while providing for a commercially reasonable sale of said cigarette inventory." (Filing No. 56, at CM/ECF p. 2). But in their sur-reply, Claimants argue:

> [I]t is commercially reasonable for the Court to order the cigarettes returned and destroyed, under the supervision of the Court, so that Claimants can claim the FET paid by them and to avoid double recovery by the Government. Claimants would agree to an alternative structure by which the tobacco is voluntarily destroyed, so that they can be provided a refund of the FET they have already paid.

(Filing No. 72, at CM/ECF p. 1).

The government has submitted evidence from an auctioneer with substantial experience in marketing and brokering bulk cigarette sales. The auctioneer proposes conducting a commercially reasonable sale by dividing the 72 pallets of cigarettes seized and stored by the government into 18 lots, with each lot consisting of four pallets of varying cigarette brands and types, thereby attracting both small- and larger-sized licensed buyers of tobacco products. (Filing No. 73-1, at CM/ECF pp. 2-3, ¶¶ 7-8). Bidders would be vetted in advance to assure they were pre-qualified; that is, all bidders must complete a form, prove they have a valid Tobacco Dealers License, and post a deposit. (Filing No. 73-1, at CM/ECF p. 3, ¶9). They must affirm that they are not "presently debarred or declared ineligible for the award of contracts by any Federal agency in accordance with 41 CFR 101-45.6;[2] . . . or the party or representing the parties from whom the property was

---

[2] Although the content of this regulation has remained stable for three decades, this citation is obsolete.

In 1986, the federal government began a process of centralizing the federal agencies' processes and listings of those permitted or barred from contracting with the government, including those who want to purchase property from the federal government. (see Debarment and Suspension February 18, 1986 Debarment and Suspension, 51 FR 6370; Debarment/Suspension of Contractors From Purchases of Federal Personal Property, 51 FR 13500-01) and 50 FR 41145-02, 1985 WL 129524). At that time, 41 CFR 101-45.6 and 41 CFR 105-67.101 had identical language, both stating "The policies, procedures, and requirements of FAR Subpart 9.4 are incorporated by reference and made applicable to contracts for, and to contractors who engage in the purchase of Federal personal property."

41 CFR § 101-45.6 became 41 CFR. § 109-45.6 in 2004. Under the 2004 regulations, "The Director, Office of Administrative Services and heads of field organizations shall establish procedures to ensure that listed contractors are not awarded contracts."

After a series of consolidations and de-duplication of regulations, 41 CFR § 105-67.101 survived. In its current form, 41 CFR 105-67.101 states "[t]he policies, procedures and requirements of Subpart 509.4 of the General Services Administration Acquisition Regulation (GSAR) are incorporated by reference and

13

seized." (Filing No. 73-1, at CM/ECF p. 17). The auctioneers personally inspected the seized cigarettes and made no changes to this initial sales plan. They, along with counsel for the government, met with Claimants' counsel. Claimants proposed no changes to the plan. (Filing No. 73-1, at CM/ECF pp. 3-4, ¶¶ 11-12). See also, Filing No. 73-1, ¶¶ 6-17).

Claimants argue the auctioneer has some experience conducting auctions on the east and west coasts, but no selling experience in the Midwest, and little to no experience auctioning tribal tobacco products. (Filing No. 76-1). This is an internet auction—the location of the auction is the world-wide-web. So I do not understand how the geographic location of past auction is relevant in assessing the auctioneer's credentials. Likewise, I do not understand why it makes a difference that the tobacco is being sold by a tribe.

The court finds the government's sale proposal provides a commercially reasonable means to sell the seized cigarettes. While Claimants argue for destruction of the cigarettes rather than selling them, they do so based on three assumptions: 1) the sale proceeds will likely be less than the FET the claimants have paid for the cigarettes; 2) selling the cigarettes may expose Claimants to State escrow responsibilities; and 3) if the cigarettes are destroyed instead, the

---

made applicable to contracts for, and to contractors who engage in, the purchase of Federal personal property." 41 CFR 105-67.101. Subpart 509.4 of the GSAR is located at 48 C.F.R., Ch. 5, Subch. B, Pt. 509, Subpt. 509.4.

As such, the regulations at 48 C.F.R. 509.401 through 509.407 currently govern "Debarment, Suspension, and Ineligibility" to bid on personal property being sold by the federal government. Those regulations incorporate and supplement, the Federal Acquisition Rules (FAR) (48 C.F.R. 9.401-9.407). They cannot contradict the FAR except in very limited circumstances.

government will be required to reimburse Claimants for the FET they paid. Based on the record before the court, no one is stating what the cigarettes are likely worth at this time, so any argument that destruction is the best option for claimants is not supported by the evidence. In addition, Rule G(7) permits the government to sell seized and perishable property so long as it is marketable. There is nothing of record indicating the cigarettes no longer have any value. If the government prevails on its forfeiture claim, it is entitled to the value of the seized property; if the Claimants prevail, they may be entitled to recover. Simply stated, destroying the cigarettes (or allowing them to rot) likewise destroys the prevailing party(s)' chance to recover anything from selling the cigarettes.

Claimants argue they are entitled to recover the FET—that allowing the government to not only retain the sale proceeds, but also the FET the claimants previously paid on those cigarettes, allows double recovery by the government. They also claim the government should not be permitted to sell the cigarettes because doing so may expose Claimants to liability for State escrow payments. (Filing No. 76).

The government's interlocutory motion is aimed at maintaining the status quo pending the outcome of the forfeiture action and any criminal proceedings; that is, the government seeks to preserve the res of the January 2018 seizures by converting that res—the seized and perishable cigarettes—into money before the cigarettes become worthless. On the motion now before the court, I need not decide whether the Claimants will ultimately be entitled to an FET tax refund or liability for State escrow payments. Those determinations can and should await a decision on the merits of the forfeiture action.

Claimants further object to the terms of the sale, arguing other HCI wholly-owned subsidiaries (e.g., Woodlands and Grand River Enterprises, Six Nations, Ltd., of Ontario Canada, etc.) should be permitted to bid on the cigarettes. The government argues these entities will merely funnel the sale proceeds, or the cigarettes themselves, back to the Claimants for the benefit of HCI. This argument is supported by the close relationship between Claimants and the wholly-owned subsidiaries of HCI. In fact, HCI and Woodlands were co-plaintiffs with Claimants in challenging the application of the CCTA in the District of Columbia courts. The government does not trust the Claimants' intentions, explaining that throughout their discussions, Claimants have resisted any sale terms that would prohibit the seized cigarettes or the profits from their sale from being ultimately funneled to HCI directly or through another wholly-owned subsidiary.

Claimants argue that other HCI wholly-owned subsidiaries are separate from Claimants. But they also argue that barring other HCI subsidiaries from buying the auctioned cigarettes will violate those subsidiaries' due process rights. If Claimants are truly separate from HCI and its other HCI wholly-owned subsidiaries, then Claimants lack standing to challenge—on due process grounds or otherwise--the government's proposal to bar any HCI entities other than Claimants from the bidding process. Perhaps more importantly, Woodlands—the entity of concern named by the government during prior conferences with the court—now states that it will not bid on the cigarettes. (Filing No. 76, at CM/ECF p. 3).

Based on the foregoing analysis, the court will order the cigarettes sold promptly and will enter the government's proposed order for that sale.

Motion to Stay
(Filing No. 45)

The government has moved to stay this forfeiture action. The foreseeable discovery in this case will delve into the government's current and ongoing criminal investigation into the importation and sale of cigarettes. Under such circumstances, the court must stay the civil forfeiture proceeding because that discovery "will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1).

The government's motion to stay will be granted.

Accordingly,

IT IS ORDERED:

1) Claimants' motion to unseal the search warrants, including the affidavits supporting those warrants, (Filing No. 37), is denied.

2) The government's motion to stay the above-captioned civil forfeiture case pending the outcome of the government's related criminal investigation, (Filing No. 45), is granted.

3) The government's motion for interlocutory sale of the cigarettes, (Filing No. 43), is granted, and VSE Corporation ("VSE") shall sell the Defendant cigarettes, as specified in the United States' Motion, under the following terms:

   a. CHCI Distribution, Inc. and Rock River Manufacturing, Inc. shall promptly execute all documents necessary, if any, to transfer possession of, and clear title to, the Defendant cigarettes to the

  United States for the sole purpose of the interlocutory sale of the Defendant cigarettes.

b.  Claimants shall provide to the government the identification of potential qualified bidders who may wish to bid on the Defendant cigarettes so that marketing information for the sale may be provided to such bidders.

c.  VSE shall initiate sale proceedings of the Defendant cigarettes within thirty days of receipt of the order directing it to do so.

d.  VSE will sell the Defendant cigarettes as an authorized agent for the ATF.

e.  VSE will employ Rick Liven and Associates, certified auctioneers in Chicago, Illinois, to conduct an internet-based auction of the Defendant cigarettes.

f.  The Defendant cigarettes will be sold "as-is and where-is."

g.  ATF has the right to reject any bid.

h.  Opening bids for the Defendant cigarettes will begin at any amount. There will be no reserve. Bidders will be allowed to participate in the sales process only after VSE has determined each bidder:

 i. Is a qualified, licensed tobacco dealer;

 ii. Is in compliance with applicable state and federal laws relating to wholesale tobacco products;

 iii. Does not owe any taxes to any state or federal entity;

 iv. Is not subject to any state or federal criminal investigation or prosecution; and

 v. The bidder will pay the appropriate sales excise taxes (if applicable) after purchasing the Defendant cigarettes.

i.  Rock River Manufacturing, Inc., HCI Distribution, Inc., and Woodlands Distribution Inc., and agents, officers and representatives of the same, are not permitted to participate in the auction. The Claimants are further prohibited from receiving the cigarettes being sold, directly or indirectly, from the successful bidder, or the profits of any re-sale of those cigarettes by the successful bidder, pending further order of the court.

j.  VSE shall notify the winning bidder and collect the sale proceeds from the winning bidder. k. The wi1ming bidder shall be responsible for removing the purchased Defendant cigarettes within thirty days of being notified its bid was accepted.

k.  The sale proceeds of Defendant cigarettes shall be distributed in the following manner:

   i.  VSE shall be paid 16.65 percent (%) of the gross sale proceeds. Such percentage includes VSE's costs in bringing the Defendant cigarettes to sale and in conducting said sale, and a commission paid to the auctioneer. ATF will pay this percentage, it shall not be deducted from the sale proceeds.

   ii. VSE shall tender the entire sale proceeds to the U.S. Marshals Service who shall hold the same until the Court directs disposition of such funds.

l.  The net sale proceeds of the Defendant cigarettes shall be held as the substitute res in lieu of the Defendant cigarettes.

m.  Following the sale, the United States will file a Report, detailing the sale of Defendant cigarettes and providing an accounting of the sale to the Court.

4) As to the government's motion for interlocutory sale, (Filing No. 43), time is of the essence. Any objection or motion to stay that order must be filed on or before December 19, 2018.

December 14, 2018.　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　*s/ Cheryl R. Zwart*
　　　　　　　　　　　　　　　　　　United States Magistrate Judge